UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AMERICAN HUMANIST ASSOCIATION
and JASON MICHAEL HOLDEN,                          Case No.: 3:14-cv-00565-HA

       Plaintiffs,                                OPINION AND ORDER

       v.

UNITED STATES OF AMERICA; FEDERAL
BUREAU OF PRISONS; FEDERAL
CORRECTIONAL INSTITUTION SHERIDAN,
OREGON; JUAN D. CASTILLO, Western Regional
Director of the Bureau of Prisons; MARION FEATHER,
Warden of the Federal Correctional Institution Sheridan,
Oregon; and RICHARD KOWALCZYK, Chaplain of the
Federal Correctional Institution Sheridan, Oregon,

       Defendants.

_____

HAGGERTY, District Judge:

       Plaintiffs, the American Humanist Association and inmate Jason Michael Holden, bring

this action seeking declaratory, injunctive, and monetary relief alleging that defendants, the

federal government, Bureau of Prisons ("BOP"), the Federal Correctional Institution ("FCI")

Sheridan, Oregon, as well as individual officials, BOP Regional Director Juan D. Castillo, FCI

Sheridan Warden Marion Feather, and Sheridan Chaplain Richard Kowalcyzk, violated Holden's

1 - OPINION AND ORDER

constitutional rights under the First and Fifth Amendments.  Defendants have filed a Motion to Dismiss [25] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants argue that plaintiffs' claims are moot; that they failed to state either an Establishment Clause or Equal Protection claim; that their *Bivens* claim is improper; that the individual defendants are entitled to qualified immunity; that the court does not have personal jurisdiction over defendant Castillo; and that the plaintiffs failed to allege Castillo's personal involvement.  For the following reasons, defendants' Motion to Dismiss [25] is denied.

## FACTUAL BACKGROUND

Plaintiff Jason Holden has been in the custody of FCI Sheridan since April 21, 2010.  A professed Humanist, Holden alleges that defendants violated his First Amendment and Fifth Amendment rights by their refusal to authorize either a Humanist study group or an Atheist study group, or to recognize Humanism as a religious assignment.

When an inmate is admitted to FCI Sheridan, he may designate a religious preference assignment, which the institution staff will then enter into the SENTRY system, a real time information system for processing sensitive but unclassified inmate information necessary for running the institution.  At the time that plaintiffs filed suit, FCI Sheridan recognized the following religious assignments: Atheist, Adventist, American Indian, Buddhist, Catholic, Church of Christ, Hindu, Jehovah's Witness, Jewish, Messianic, Moorish Science Temple, Mormon, Muslim, Nation of Islam, No Preference, Non-Trinitarian, Orthodox, Other, Pagan, Protestant, Rastafarian, Santeria, Sikh, and Unknown.  The FCI Sheridan also permitted the following sub-groups to meet in study groups: Spanish Protestant, Native American Church, Native American (Hawaiian), Druid, and Odinist/Asatru.  Inmates of FCI-recognized religious assignments are entitled to the following benefits: (1) "proscription days" for religious holidays;

2 - OPINION AND ORDER

(2) at least one hour per week of group study time; and (3) at least one hour per week of group worship time.

On April 15, 2012, Holden sought permission to make Humanism his religious assignment but was told by then Assistant Chaplain Jason Henderson that Humanism was not an option. Holden selected Atheist as his religious assignment instead despite the fact that Atheism does not adequately capture his system of beliefs. At that time, neither Humanists nor Atheists, despite the fact that the latter was listed on SENTRY, had a venue for group meetings. Holden asserts that at least ten additional inmates incarcerated at FCI Sheridan identify as Humanists and are interested in joining a Humanist study group. That same day, Holden asked Assistant Chaplain Henderson if he could form a Humanist study group. Henderson provided Holden with form BP-822, which an inmate must fill out to have a new or unfamiliar religion officially recognized with the FCI. Henderson warned Holden that the BOP views Humanism as a philosophy rather than a religion and recommended that instead he should informally request "cop out" time for Atheists. A cop out is a BP S148.055 "Inmate Request to Staff" form, which is used for inmate grievances and requests.

Heeding Henderson's advice, on April 29, 2012, Holden submitted the cop out form to the Chaplain's office requesting time for Atheists to meet. On June 11, 2012, then Head Chaplain Ronald Richter informed Holden and another Humanist inmate that his request was denied. Richter informed them that chapel programming was limited to religious programs and that programs that are moralistic or philosophical in nature may be conducted in the education department.

On July 13, 2012, Holden submitted a cop out form to Supervisor of Education Sue Cain requesting a venue for Humanists to meet in the Education Department. Additionally on July 18,

3 - OPINION AND ORDER

2012, Holden submitted a request to Warden Marion Feather to establish "Humanists of Sheridan" as an inmate organization.  On August 1, 2012, Feather denied Holden's request.  On August 6, 2012, Holden sent a second request to Feather seeking to establish a Humanist group; along with the request, Holden sent additional background information in support of his request. Holden's second request was also denied.  On September 4, 2012, Holden received a response from Cain also denying his request.  Cain told Holden that the Education Department cannot support groups that are "either for or against theism."

On September 15, 2012, Holden spoke with new Head Chaplain Myers about the BP-822 form.  Myers advised Holden that Humanism is not a religion and that his application to recognize Humanism would not be successful.  On October 5, 2012, Holden submitted the BP-822 form requesting that Humanism be his religious assignment in SENTRY.  Holden provided materials detailing the history of Humanism as a religion along with the form.  Myers informed Holden that he was not interested in reading Holden's BP-822 form and that he would forward his request to the Warden.

On December 7, 2012, Holden spoke with Warden Feather about his application and she suggested that he speak with the Chaplain.  On February 28, 2013, Holden spoke with Chaplain Richard Kowalczyk, who was Supervisor of Religious Services at that time.  Kowalczyk told Holden that his BP-822 form was denied.  Kowalczyk explained to Holden that Humanism is an "individualized religion" and that it would be a contradiction to accommodate "a congregation of individuals."

On March 4, 2013, Holden submitted a Informal Resolution form (BP-8) which is required prior to filing a Request for Administrative Remedy form (BP-9).  On or about March 11, 2013, Holden submitted the BP-9 form to the Warden along with supporting documentation.

4 - OPINION AND ORDER

On March 14, 2013, Warden Feather affirmed the denial of the request.  Warden Feather said that the "designation of 'Atheist' already exists to encompass the Humanist point of view." Notwithstanding that fact, FCI Sheridan officials had denied Holden's request to form an Atheist study group despite the fact that Atheism is considered a religion at the FCI Sheridan.

On March 18, 2013, Holden mailed the Administrative Remedy Form (BP-10) to the BOP Western Regional Office along with his BP-9 form and supporting exhibits.  On April 24, 2013, Holden received a response to his BP-10 form from BOP Western Regional Director Juan D. Castillo. Signed April 3, 2013, Castillo affirmed the denial of Holden's request to allow Humanist inmates to meet as a group in Religious Services as well as the creation of a Humanist religious assignment.

On April 28, 2013, Holden mailed the Administrative Remedy Form (BP-11) to the BOP Office of the General Counsel, attaching supporting exhibits along with the copies of previous administrative remedy forms and their responses.  On May 26, 2013, Holden received a Notice of Rejection of his BP-11 Form because it lacked the required copies.  The notice had been mailed on May 9, 2013, and its resubmission deadline was May 24, 2013.  On May 29, 2013, Unit Manager S. Price sent a letter to the Department of Justice on Holden's behalf explaining that he was unable to timely resubmit his form because he did not receive the notice until after the resubmission deadline had passed.  On May 30, 2009, Holden resubmitted his BP-11 form. Nonetheless, on July 2, 2013, Holden's BP-11 form was rejected as untimely.

On July 5, 2013, Holden was instructed to send a cop out form to Administrative Coordinator Thompson for instructions on how to proceed in order to exhaust his administrative remedies.  On July 8, 2013, Holden sent a cop out form to Thompson.  On July 16, 2013, Warden

Feather responded to the cop out, directing Holden to discuss his inability to file his remedy with

Unit Manager Price, which Holden had done previously.

On April 8, 2014, plaintiffs filed suit against defendants. On or about May 20, 2014,

Chaplain Kowalczyk notified Holden that his BP-822 request for a Humanist group was being

revisited. On or about June 24, 2014, Chaplain Kowalczyk, informed Holden that Holden could

form a Unitarian Universalist study group. Holden said that this was unacceptable since he does

not consider himself a Universalist Unitarian. When Holden asked to have the group called

Humanist, Kowalczyk responded that the label might exclude others.

Sometime in early July 2014, the FCI Sheridan Religious Services Department added a

Humanist Study Group to the program schedule. Holden claims he was not informed of this

change but began attending meetings on July 7, 2014. Despite these accommodations, plaintiffs

allege that defendants are still singling out Humanists for unequal treatment. Study groups are

permitted to have outside volunteers attend and lead meetings. But after Holden requested a

volunteer to meet with the Humanist study group and suggested that officials contact the

Humanists of Greater Portland, he was told that he could not have a volunteer from that

organization because he had mentioned the organization. Defendants allege that they denied

Holden's request to contact Humanist minister Bernie Dehler, who is affiliated with the

Humanists of Greater Portland, because he had been in contact with Holden previously and so

FCI Sheridan had sent a follow up request to Humanists of Greater Portland seeking a different

volunteer and is still awaiting a response. In addition, Holden had made several requests in July

to obtain Humanist books and DVDs on the same terms that other groups received similar

materials. On September 11, 2014, Religious Services responded, stating that the materials

Holden requested would be considered for purchase. Defendants state that to date, FCI Sheridan

has purchased four books that Holden had requested.

## ANALYSIS

Defendants argue that the case should be dismissed under Rule 12(b)(6) of the Federal

Rules of Civil Procedure because plaintiffs have failed to state a claim, and dismissed in part

under 12(b)(1) for lack of personal jurisdiction. First, defendants claim that the accommodations

that the FCI Sheridan has made to Holden render plaintiffs' claims moot. Second, defendants

argue that plaintiffs have failed to state a cognizable Establishment Clause claim. Third,

defendants argue that plaintiffs have failed to state an Equal Protection claim. Fourth, defendants

assert that a *Bivens* remedy is not available to plaintiffs and that even if it were, the individual

defendants are entitled to qualified immunity. In addition, defendants argue that the case against

defendant Castillo should be dismissed for lack of personal jurisdiction and for lack of personal

involvement. The court will consider each of defendants' arguments in turn.

### a.    Rule 12(b)(6) Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure (FRCP) 12(b)(6), a

complaint must allege sufficient facts to state a claim for relief that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court

must determine whether the plaintiff has made factual allegations that are "enough to raise a right

to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Dismissal under FRCP 12(b)(6) is proper only where there is no cognizable legal theory, or an

absence of sufficient facts alleged to support a cognizable legal theory. *Shroyer v. New Cingular*

*Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The reviewing court must treat all

facts alleged in the complaint as true and resolve all doubts in favor of the nonmoving party.

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1098 n.1 (9th Cir. 2009) (citation omitted).  The court need not accept any legal conclusions set forth in a plaintiff's pleading. *Ashcroft*, 556 U.S. at 678.

### 1.    Mootness

Defendants first argue that now that Humanism has been added to the program schedule at the FCI Sheridan, plaintiffs' claims that defendants are not providing time and space accommodation to Humanists are moot.   Article III of the United States Constitution limits this court's jurisdiction to actual cases or controversies. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing U.S. Const. art. III, § 2, cl. 1).  This restriction requires that an actual, ongoing controversy exist at all stages of the federal court proceeding. *Id.* (citation omitted).  Once the dispute between the parties no longer exists, or the parties lack a legally recognizable interest in the outcome of the litigation, the case becomes moot and must be dismissed. *Id.* at 1086–87 (citations omitted).  The party asserting mootness, however, has a heavy burden to meet. *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008).  Moreover, a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  Accordingly, the voluntary cessation of challenged conduct moots a claim only if "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)).  Defendants have the burden of demonstrating "why repetition of the wrongful conduct is highly unlikely." *Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009).  This stringent

8 - OPINION AND ORDER

requirement exists to prevent parties from evading judicial review by temporarily altering questionable behavior. *City News & Novelty Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001). As a result, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emps. Int'l Union Local 1000*, 132 S. Ct. 2277, 2287 (2012).

Here, while the defendants argue that they have accommodated Holden's requests after more than two years—his requests for Humanist study materials and a community volunteer were not addressed until after defendants filed their motion to dismiss—they have not stipulated or demonstrated that their behavior is unlikely to reoccur after this case is dismissed. Since defendants have not satisfied their burden, the court finds that plaintiffs' claims are not moot. *Rosemere Neighborhood Ass'n*, 581 F.3d at 1173.

### 2. Establishment Clause Claim

Defendants next assert that plaintiffs fail to state a cognizable First Amendment claim under the Establishment Clause. Defendants argue that the plaintiffs have failed to allege a law or government policy that purports to favor one religion over another. Moreover, defendants state the plaintiffs have failed to show that Humanism is a religion for Establishment Clause purposes. In fact, defendants assert that the Ninth Circuit has definitively held in *Peloza v. Capistrano Unified School Dist.*, that Humanism is not a religion for Establishment Clause purposes. 37 F.3d 517, 521 (9th Cir. 1994).

The Establishment Clause, states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The clause "means at least 'that [n]either a state nor the Federal Government ... can pass laws which aid one religion, aid all religions, or prefer one religion over another.'" *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013) (quoting *Everson v. Board of Education of Ewing Twp. et al.*, 330

9 - OPINION AND ORDER

U.S. 1, 15 (1947)).  For the purpose of an Establishment Clause violation, "a government policy

need not be formal, written, or approved by an official body to qualify as state sponsorship of

religion." *Canell v. Lightner*, 143 F.3d 1210, 1214 (9th Cir. 1998).  Where a governmental law

or policy gives a preference to one religion over another, the court must treat that policy as

suspect and apply strict scrutiny.  *Larson v. Valente*, 456 U.S. 228, 246 (1982).  Such a policy

will be presumed unconstitutional unless it is "justified by a compelling governmental interest,"

and the policy "is closely fitted to further that interest."  *Id.* at 247.  Other districts in the Ninth

Circuit have applied this test to prisoner claims.  *See Warrior v. Gonzalez,* C 08-00677 CRB,

2013 WL 6174788 (E.D. Cal. Nov. 20, 2013) (finding that prison strip search "policy

significantly burdens Muslim inmates attending Ramadan religious programming, and that no

such policy is applied to Catholic and Jewish inmates attending comparable religious

programming"); *Evans v. California Dep't of Corr. & Rehab.*, CV 07-07090 DDP SSX, 2012

WL 137802 (C.D. Cal. Jan. 18, 2012) (prison officials violated the Establishment Clause by

providing kosher meals to Jewish inmates, but not providing similar accommodations to Muslim

inmates).

       Thus, if Humanism is considered a religion for Establishment Clause purposes, plaintiffs

have made a colorable claim that defendants have violated Holden's First Amendment rights.

The court believes that defendants' reliance on *Peloza*, is misplaced.  That case focused primarily

on whether the teaching of evolutionary biology violated the Establishment Clause and the Ninth

Circuit held that it did not.  *Peloza*, 37 F.3d 521-522.  In fact, the Ninth Circuit has cast doubt on

defendants' broad interpretation of *Peloza. See Grove v. Mead Sch. Dist.,* 753 F.2d 1528, 1534

(9th Cir. 1996) (considering but not deciding whether Secular Humanism is a religion); *id.* at

1537 (Canby, J. concurring) (suggesting that an organized group of Secular Humanists, but not

Secular Humanism generally, might be covered by the Establishment Clause). Moreover, the

Ninth Circuit appears to be moving toward the view that the "disparate treatment of theistic and

non-theistic religions is as offensive to the Establishment Clause as disparate treatment of theistic

religions." *Faith Ctr. Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 902 (9th Cir.

2007) (Bybee, J., dissenting). Such a view is consistent with longstanding Supreme Court

jurisprudence. In *Torcaso v. Watkins,* the Supreme Court said that the government must not "aid

those religions based on a belief in the existence of God as against those religions founded on

different beliefs." 367 U.S. 488, 495 (1961). Among these latter religions, in a footnote the

Court included Secular Humanism. *Id.* at 495 n. 11. Therefore, the court finds that Secular

Humanism is a religion for Establishment Clause purposes and that plaintiffs have alleged

sufficient facts to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678.

### 3.    Equal Protection Claim

Defendants next assert that because plaintiffs do not allege any discriminatory intent on

the part of defendants, plaintiffs have failed to state an Equal Protection claim. The Equal

Protection Clause mandates that prison officials cannot discriminate against particular religions.

*Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997). Prisons must afford an inmate of a

minority religion "a reasonable opportunity of pursuing his faith comparable to the opportunity

afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto,* 405 U.S.

319, 322 (1972) (per curiam). Prisons need not provide identical facilities or personnel to

different faiths, *see id.* at 322 n. 2, but must make "good faith accommodation of the [prisoners']

rights in light of practical considerations." *Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir. 1987).

To avoid dismissal, a plaintiff must plausibly suggest the existence of a discriminatory

intent. *Recinto v. U.S. Dep't of Veterans Affairs*, 706 F.3d 1171, 1177 (9th Cir. 2013). However,

discriminatory intent can sometimes be inferred by the mere fact of different treatment. *Sischo-Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1112 (9th Cir. 1991). The Ninth Circuit has held that to defeat a summary judgment motion, a plaintiff need only "'set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional." *Freeman*, 125 F.3d at 737 (quoting Fed. R. Civ. P. 56(e)).

Here, plaintiffs have clearly shown that Holden's religious beliefs were the reason why defendants refused to grant his requests. Defendants' actions need not be malicious, only motivated by the fact that plaintiffs' hold a different set of religious beliefs. Allowing followers of other faiths to join religious group meetings while denying Holden the same privilege is discrimination on the basis of religion. Therefore, the court finds that plaintiffs have alleged sufficient facts to state an equal protection claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678.

### 4.    *Bivens* Claim

Defendants next argue that plaintiffs' claims for damages against the individual defendants under *Bivens* are improper because plaintiffs could have brought an action under the Religious Freedom and Restoration Act (RFRA). Moreover, even if plaintiffs could bring a damages action against the individual defendants, they argue that they are entitled to qualified immunity.

### A.    *Bivens* and the Religious Freedom Restoration Act

A *Bivens* action seeks damages for constitutional violations committed by federal agents acting under federal authority . *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). Although "more limited in some respects," it is analogous to an action against state or

12 - OPINION AND ORDER

local officials under 28 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n. 2 (2006). The

Supreme Court has said that the decision to recognize a *Bivens* remedy requires the court to

engage in a two part inquiry. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, the court must

determine whether any "alternative, existing process for protecting" the constitutional interest

"amounts to a convincing reason for the Judicial Branch to refrain from providing a new and

freestanding remedy in damages." *Id.* This alternative remedial scheme need not be equally

effective as a *Bivens* remedy. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001)

(refraining from creating a judicially implied remedy even when the available statutory remedies

"do not provide complete relief" for a plaintiff that has suffered a constitutional violation).

Second, in the absence of an alternative remedy,"the federal courts must make the kind of

remedial determination that is appropriate for a common-law tribual, paying particular heed,

however, to any special factors counseling hesitation before authorizing a new kind of federal

litigation." *Bush v. Lucas*, 462 U.S. 367, 378 (1983).

   The Supreme Court has never held that *Bivens* extends to First Amendment claims.

*Reichle v. Howards,* 132 S.Ct. 2088, 2093 n. 4 (2012); *see also Ashcroft v. Iqbal,* 556 U.S. at 675

(declining to decide whether a free exercise claim is actionable under *Bivens*); *Bush v. Lucas,* 462

U.S. 367, 368 (1983) (refusing to extend *Bivens* to a First Amendment speech claim involving

federal employment). Defendants argue that *Bivens* does not apply to plaintiffs' Establishment

Clause claims because there is an alternative remedial scheme: the Religious Freedom

Restoration Act of 1993 (RFRA). RFRA "prohibits '[g]overnment' from 'substantially

burden[ing]' a person's exercise of religion even if the burden results from a rule of general

applicability unless the government can demonstrate the burden '(1) is in furtherance of a

compelling governmental interest; and (2) is the least restrictive means of furthering that

13 - OPINION AND ORDER

compelling governmental interest.'" *City of Boerne v. Flores,* 521 U.S. 507, 515-516 (1997) (quoting 42 U.S.C. § 2000bb *et seq.*; brackets in original).

However, RFRA focuses on an individual's freedom to practice his religion without interference from the federal government. Plaintiffs' claim is that the government has violated the Establishment Clause by favoring other religions over Humanism. As defendants point out in their brief, RFRA does not apply to the Establishment Clause. 42 U.S.C. § 2000bb-4 ("Nothing in this chapter shall be construed to affect, interpret, or in any way address that portion of the First Amendment prohibiting laws respecting the establishment of religion"). The Ninth Circuit has held that state officials can violate a person's rights under the Establishment Clause without violating the Religious Land Use and Institutionalized Persons Act (RLUIPA), the federal law similar to RFRA that applies to state officials. *Inouye v. Kenma,* 504, F.3d 705, 714 (9th Cir. 2007). Similarly, the Seventh Circuit has held that "the Establishment Clause may be violated even without a substantial burden on religious practice. . . ." *Kaufman v. Pugh,* 733 F.3d 692, 696 (7th Cir. 2013). Thus, the court finds that RFRA does not apply here. Based on the legal standard which must be applied, defendants have not demonstrated that plaintiffs have failed to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 545. Therefore, plaintiffs' *Bivens* claims survive defendants' motion to dismiss. While this court is aware that in the absence of an alternative remedy, it "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counseling hesitation before authorizing a new kind of federal litigation," the court feels that it is unnecessary to engage in this inquiry at this stage of the litigation. *Malesko,* 534 U.S. at 69 (quoting *Bush,* 462 U.S. at 378).

///

### B.    Qualified Immunity

Defendants argue that even if plaintiffs have a cognizable *Bivens* claim, the individual

defendants are entitled to qualified immunity. Qualified immunity protects government officials

from "liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants are entitled to qualified immunity where they

"reasonably could have believed that their conduct was lawful 'in light of clearly established law

and the information that they possessed.'" *Cohen v. San Bernardino Valley College*, 92 F.3d 968,

973 (9th Cir. 1996) (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)). The

Supreme Court has established a two-part analysis for determining whether qualified immunity is

appropriate in a suit against an officer for an alleged violation of a constitutional right. *Saucier v.*

*Katz*, 533 U.S. 194, 201 (2001). The court must determine whether the officer violated the

plaintiff's constitutional rights on the facts alleged and whether the constitutional rights were

clearly established. *Id.* The Supreme Court has since explained that a court can proceed through

these steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

This court has already found that plaintiffs have stated plausible claims regarding the

violation of their constitutional rights; thus the court must determine whether those rights were

clearly established. The fact that the action in question has not previously been declared

unlawful does not require a finding of qualified immunity; even in novel circumstances officials

can be on notice that their conduct violates the Constitution. *Chappell v. Mandeville*, 706 F.3d

1052, 1056-57 (9th Cir. 2013). What is crucial is that "[t]he contours of [a] right [are]

sufficiently clear" that a "reasonable official would have understood that what he is doing

violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A case need not be

15 - OPINION AND ORDER

directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). "Absent binding precedent," the Ninth Circuit has said that courts should "look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established." *Osolinski v. Kane* 92 F.3d 934, 936 (9th Cir. 1996).

Defendants argue that they are unaware of any Supreme Court precedent or circuit court decision issued before or during the period where the alleged violation occurred that has held that Humanism is a religion for the purposes of the Establishment Clause. However, as noted above, the Supreme Court in *Torcaso*, referred to "Secular Humanism" as a religion. 367 U.S. at 495 n. 11. Moreover, in *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, the Supreme Court said that the touchstone of the Establishment Clause was the "principle that the First Amendment mandates government neutrality between religion and religion, and *between religion and nonreligion*." 545 U.S. 844, 860 (2005) (emphasis added). Thus, whether Humanism is a religion or a nonreligion, the Establishment Clause applies. In addition, the Seventh Circuit has held that a prison violated inmates' constitutional rights when it refused to allow an Atheist study group on the grounds that it was not a religion. *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005). This year, the Seventh Circuit laid it out even more clearly, "when making accommodations in prisons, states must treat atheism as favorably as theistic religion," and that, "[w]hat is true of atheism is equally true of humanism, and as true in daily life as in prison." *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 873 (7th Cir. 2014). Although this decision was issued after the alleged violations occurred, the court does not find the Seventh Circuit's opinion to be revelatory or a departure from existing doctrine. Rather, the court simply summarized the law as it is commonly understood. Thus, the court finds that the right was

clearly established and that defendants have not presented sufficient evidence to demonstrate that the individual defendants are entitled to qualified immunity.

b.      **Rule 12(b)(1) Legal Standard**

Next, defendants argue that the court does not have personal jurisdiction over defendant Castillo, who is the Director of the Western Region of the BOP which is based in Stockton, California. Plaintiffs bear the burden of establishing that this court has personal jurisdiction over defendant. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). However, plaintiffs need only make a prima facie showing of facts that support the exercise of jurisdiction over defendant. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis. The exercise of jurisdiction must: (1) satisfy the requirements of the long-arm statute of the state in which the district court sits; and (2) comport with the principles of federal due process. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Oregon Rule of Civil Procedure (ORCP) 4(B)-(K) provides specific bases for personal jurisdiction and subsection (L) extends jurisdiction to the limits of due process under the United States Constitution. *Nike, Inc. v. Spencer*, 707 P.2d 589, 591 (Or. Ct. App. 1985); *see* ORCP 4. Therefore, plaintiff need only satisfy the second prong of the personal jurisdiction test.

The Due Process Clause of the U.S. Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not

offend traditional notions of fair play and substantial justice." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co.*, 326 U.S. at 316). "A court may exercise either general or specific jurisdiction over a nonresident defendant." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted).

For a defendant to be subject to general personal jurisdiction, the defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (citation omitted). The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." *Tuazon*, 433 F.3d at 1169 (citation omitted). Unless the defendant can be deemed "present" within the forum for all purposes, general jurisdiction is not appropriate. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Because defendant Castillo's contacts in Oregon do not approximate physical presence in the state and plaintiff does not contend that defendant is subject to general personal jurisdiction in Oregon, it is clear that general jurisdiction is inappropriate.

In contrast to general personal jurisdiction, specific jurisdiction exists where: (1) the defendant has purposefully directed his activities or consummated some transaction with the forum of the resident thereof; or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of, or relates to, the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Washington Shoe Co. v, A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012) (citation omitted). If the plaintiff meets the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Id.* (citation omitted). However, if the plaintiff fails at the

18 - OPINION AND ORDER

first or second step, then the jurisdictional inquiry ends and the defendant must be dismissed

from the case. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

 To establish the first prong for specific jurisdiction, plaintiff must demonstrate that

defendant either purposefully availed himself of the privilege of conducting activities in the

forum, or purposefully directed his activities at the forum. *Washington Shoe Co.*, 704 F.3d at

672. The purposeful availment analysis is used in contract suits, while the effects test is used in

tort cases. *Id*. at 672-73. The effects test was established in *Calder v. Jones*, 465 U.S. 783

(1984). This is the proper analytical lense through which to view personal jurisdiction in a tort

claim such as the one alleged in the present case. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647

F.3d 1218, 1228 (9th Cir. 2011). To satisfy the effects test, "the defendant allegedly must have

(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le

Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger v.

Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

 The Ninth Circuit has not decided on whether a district court can exercise personal

jurisdiction of a Regional Director of the BOP who does not reside within that district but whose

official responsibilities and actions include federal facilities within that district. However, the

Tenth Circuit has ruled that out-of-state prison officials were not subject to personal jurisdiction

merely as a result of their supervisory roles. *Hill v. Pugh*, 75 Fed. 715, 719 (10th Cir. 2003).

However, that decision seemed to focus on the concern that "federal prison officials may be

hauled into court simply because they have regional and national supervisory responsibilities

over facilities within a forum state," just because a inmate had submitted a grievance form to

them. *Id.* The important inquiry is whether an out-of-state defendant's actions were

"purposefully directed" toward the forum state.  In another Tenth Circuit case, the court held that the court had personal jurisdiction over the BOP Director because he had refused to approve medication recommended for the plaintiff's Hepatitis C infection.  *Arocho v. Nafziger*, 367 Fed. Appx. 942, 949-950 (10th Cir. 2010).  The court found that this refusal was both an intentional act and aimed at the forum state and thus the court had personal jurisdiction.  *Id.* at 950.

Defendant Castillo's actions are analogous to *Arocho*.  Whether or not Castillo's actions violated Holden's constitutional rights is still subject to debate but Castillo's affirmation of the denial of Holden's request to allow Humanists to meet as a group and for the creation of a Humanism religious assignment was an intentional act directed at the forum state, satisfying the first prong of the test for specific jurisdiction.  The second prong is satisfied because plaintiffs' claim arises out of Castillo's action.  Finally, defendants have not made a showing that the court's exercise of personal jurisdiction over Castillo would be unreasonable.  Therefore the court has personal jurisdiction over Castillo and defendants' motion to dismiss plaintiffs' claims against him is denied.

### c.    Lack of Personal Involvement

Finally, defendants argue that plaintiffs' claims against defendant Castillo must be dismissed because Castillo did not personally engage in conduct that violated Holden's constitutional rights.   Defendants argue that *Bivens* actions do not recognize respondeat superior or group liability.  However, as the court understands it, plaintiffs are not arguing that Castillo is liable for his supervisory role.  Rather, plaintiffs argue that Castillo's affirmance of the denial of Holden's request constituted a direct violation of his constitutional rights.  Thus, defendants' motion to dismiss defendant Castillo as a defendant is denied.

///

**CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss [25] is DENIED.

IT IS SO ORDERED.

DATED this 30 day of October, 2014.

                                        Ancer L. Haggerty
                                  United States District Judge